**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| NATIONAL AMERICAN INSURANCE COMPANY, )  )  )  Plaintiff, )  )  v. )  )  ABC CONCRETE MFG. CO., INC.; ABC CONCRETE MFG. CO., INC. d/b/a ABC SEPTIC SYSTEMS, INC.; NICHOLAS MONTANO; and NATIONAL CASUALTY COMPANY, )  )  )  )  )  )  )  )  Defendants, )  ) | CASE NO.:  1:15-CV-01169-KG-KBM |

**DEFENDANT NATIONAL CASUALTY COMPANY'S RESPONSE TO PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT**

COMES NOW Defendant National Casualty Company ("NCC") and submits the following Response in Opposition to Plaintiff's Motion for Summary Judgment (Doc. 68).

**INTRODUCTION AND SUMMARY OF ARGUMENT**

The fundamental pillar of NAICO's argument is that, when it issued the subject policy, NAICO was operating with the understanding that the trucking operations of ABC Concrete Manufacturing Co., Inc.'s ("ABC Concrete") and ABC Concrete MFG. Co. Inc. d/b/a ABC Septic Systems, Inc. ("ABC Septic") were separate and distinct. However, the undisputed evidence indicates that Woods Insurance Service, Inc. ("Woods"), NAICO's agent, knew that all of the trucking operations were conducted under the same name. Indeed, another insurer that was asked to issue the same policy that NAICO was asked to issue told Woods the trucking operations were conducted "under the same name." This single fact should end the need for any further analysis of the alleged mutual mistake.

Further, the notion that there was a specific meeting of the minds between NAICO and ABC Concrete that, by mistake, was omitted from the NAICO policy when it was issued is directly contradicted by the parties' actions and NAICO's binding pleading. Indeed, before NAICO filed its lawsuit, NAICO's general counsel drafted an affidavit for ABC Concrete's president, Doug Murray, to sign to confirm the alleged mutual mistake. However, Murray expressly refused to sign the affidavit. His words were "you could stick this where the sun doesn't shine," and he wrote to NAICO that he would not do so "because it would take [NAICO] out of the picture completely." Murray's rejection of the affidavit specifically drafted by NAICO's general counsel to memorialize the alleged mutual mistake should similarly end any claim for reformation.

Moreover, in its Amended Complaint, NAICO pled as follows:

> 54.    Both NAICO and ABC MFG labored under the same erroneous conception that the NAICO policy would not be insuring for-hire long-haul or interstate trucking operations for ABC MFG. Had NAICO known the true facts, it would have issued a policy of insurance that provided insurance only for "Specifically Described 'Auto'" and would not have included vehicles involved in for-hire long-haul trucking.

Doug Murray, ABC Concrete's owner, specifically testified that this assertion was false. There is simply no mutual mistake here.

In addition, NAICO's allegation that, contrary to what it pled in its Amended Complaint in paragraph 54 noted above, what the parties really agreed upon was a specific exclusion precluding coverage for "for-hire" trucking is directly contradicted by the fact that: (1) NAICO's underwriters have never seen or heard of a "for-hire trucking" exclusion, and (2) Doug Murray testified that there was never any discussion about a "for-hire trucking" exclusion. Also, when NAICO allegedly realized that the trucking operations of ABC Concrete and ABC Septic were

not separate and distinct, NAICO did not issue a "for-hire trucking" exclusion. Rather, NAICO cancelled the policy and made no mention of an alleged mutual mistake regarding a "for-hire" exclusion.

NAICO simply cannot get its story straight. For example, Doug Murray says that he intended NAICO to cover hundreds of trips to/from Fort Bliss, Texas (approximately 400 miles each way), but NAICO says it did not intend to cover such trips and that there was no mistake between the parties. Incredibly, NAICO says it did not intend to cover any interstate operations of ABC Concrete, but its own loss control survey showed that ABC Concrete delivered its product in 46 states and operated in a "normal" radius of 150 miles in four (4) states.

It is clear that NAICO knew that ABC Concrete was operating in interstate commerce and there was no separation of the trucking operations of ABC Concrete and ABC Septic (which had been a defunct legal entity for many years). Additionally, had NAICO simply followed its internal underwriting protocols and pulled public information from the Federal Motor Carrier Safety Administration, NAICO would have learned all of the information that it says it did not have. Simply put, NAICO cannot use reformation to erase its failure to exercise due diligence.

## RESPONSE TO PLAINTIFF'S UNDISPUTED MATERIAL FACTS

1.      NCC admits that ABC Concrete submitted commercial insurance applications to NAICO through NAICO's agent Woods. However, NCC states that the portion of Murray's testimony cited in paragraph 1 does not support NAICO's contention.

2.      NCC admits that the application referenced in paragraph 2 speaks for itself. In any event, the facts are clear that the NAICO Policy was not intended to be limited in the way NAICO contends. ABC Concrete sought coverage for multiple tractor-trailers that NAICO knew were being operated in interstate commerce. Ex. 1, NAICO000100-103, 3099-3103. In fact,

NAICO investigated ABC Concrete's operation and noted that it was delivering its products sold in 46 states and operated in interstate commerce within a "normal" radius of 150 miles. Ex. 1, NAICO003102. NAICO's underwriting manager testified that NAICO did not intend to cover these activities, which contradicts any argument that there was a mutual mistake to cover everything except for-hire trucking. Ex. 2, Ray Dep. 57:22-59:11, 101:15-18. Further, it is undisputed that Murray intended ABC Concrete's long-haul and interstate operations to be covered by the NAICO Policy regardless of whether ABC Concrete's tractor-trailers were traveling 150 miles or more, which directly contradicts the allegations in NAICO's Amended Complaint (Doc. 5, ¶¶ 54, 56). Ex. 3, Murray Dep. 69:11-70:20. Further, Murray told NAICO that ICC filings (signifying for-hire, interstate carriage) would be required for the NAICO Policy. Ex. 1, NAICO003740-41. After the subject loss, NAICO asked Murray to sign an affidavit stating that ABC Concrete did not intend for NAICO to cover the ABC Septic trucking operation, but Murray refused. Doc. 74, Ex. 1, NAICO000643-46. It is therefore obvious that what Murray, as ABC Concrete's president, believed was not what NAICO believed, which ends any mutual mistake argument. Further, NAICO's agent Woods, knew that all of the trucking operations were conducted under ABC Concrete before the NAICO Policy was issued. Doc. 74, Ex. 6, WOODS(2)000228. Thus, Woods and NAICO knew that a policy issued by NAICO providing coverage for "any 'auto'" would cover all trucking operations, including the Underlying Accident.

3.      NCC states that the application referenced in paragraph 3 speaks for itself. For further response, NCC incorporates its response to paragraph 2 herein.

4.      NCC states that the application referenced in paragraph 4 speaks for itself. However, NCC denies that ABC Concrete was not authorized to conduct long-haul or interstate

trucking because ABC Concrete was authorized by the Federal Motor Carrier Safety Administration ("FMCSA") as an interstate motor carrier. Ex. 4, SAFER Report for ABC Concrete; Ex. 3, Murray Dep. 73:7-22. For further response, ABC Concrete sought coverage for multiple tractor-trailers that NAICO knew were being operated in interstate commerce. Ex. 1, NAICO000100-103, 3099-3103. NCC states that it is clear that ABC Concrete sought coverage from NAICO for ABC Concrete's long-haul and interstate trucking operations. Ex. 3, Murray Dep. 69:11-70:20. Further, Murray told NAICO that ICC filings (signifying for-hire, interstate carriage) would be required for the NAICO Policy. Ex. 1, NAICO003740-41.

5.     NCC admits that NAICO received the email from Woods attached as Exhibit 3. However, NCC denies that Woods was ABC Concrete's agent. Rather, the evidence demonstrates that Woods was NAICO's agent as NAICO and Woods entered an Agency/Company Agreement authorizing Woods to act as NAICO's agent, Ex. 6, Agency/Company Agreement; Woods' president Lyle Love testified that Woods was NAICO's agent, Doc. 74, Ex. 5, Love Dep. 48:22-49:1; NAICO's internal claim notes reflect that NAICO believed Woods was NAICO's agent, Ex. 7; and NAICO has admitted that Woods was acting as the agent of both NAICO and ABC Concrete with respect to the NAICO Policy. Ex. 8. Further, at the time Woods sent the email attached as Exhibit 3, Woods specifically knew that the statements made in the email were false and that all of the trucking operations were conducted under ABC Concrete. Doc. 74, Ex. 6, WOODS(2)000228. In particular, the email attached as NAICO's Ex. 3 was written weeks after Woods was told that there was no separation between the trucking operations and that all of the trucking operations were conducted under ABC Concrete. Id.

6.      NCC admits that Anita Marshall and Glaetta Ray testified that they believed that NAICO thought ABC Concrete and ABC Septic were separate legal entities. However, NAICO has admitted that it made no attempts to verify whether ABC Concrete and ABC Septic were, in fact, separate entities. Ex. 9. NCC denies that NAICO believed ABC Concrete and ABC Septic were separate legal entities because Woods, NAICO's agent, was told that all of the trucking operations were conducted under ABC Concrete before the NAICO Policy was issued. Doc. 74, Ex. 5, Love Dep. 48:22-49:1, Doc. 74, Ex. 6, WOODS(2)000228. Further, there is no evidence that NAICO actually investigated whether ABC Concrete was operating for-hire.

7.      NCC admits that Anita Marshall and Glaetta Ray testified that they believed that NAICO thought ABC Concrete was not engaged in for-hire trucking activities. For further response, NCC incorporates its response to paragraph 7 herein.

8.      NCC admits paragraph 8.

9.      NCC admits that NAICO employees Glaetta Ray and Anita Marshall testified that they distinguish between for-hire and private loads. However, neither Ray nor Marshall were able to articulate any basis for distinguishing between for-hire and private loads or why for-hire trucking posed a greater risk than private trucking. Ex. 2. Ray Dep. 19:13-25, 81:19-84:1; Ex. 10, Marshall Dep. 12:10-13:24, 18:4-7. In any event, the NAICO Policy did not include a for-hire exclusion. Further Ray and Marshall both testified that they had never seen a for-hire exclusion or seen NAICO issue a policy with a for-hire exclusion. Ex. 2, Ray Dep. 20:25-21:9; Ex. 10, Marshall Dep. 35:5-11.

10.      NCC admits that NAICO employees Glaetta Ray and Anita Marshall testified that they believe for-hire trucking carries greater risk than private trucking. For further response, NCC incorporates its response to paragraph 9 herein.

11.     NCC admits that Glaetta Ray and Anita Marshall testified that NAICO did not intend to provide coverage for for-hire trucking, and that NAICO only intended to cover the transport of private loads. However, NCC denies that the NAICO Policy did not provide coverage for "for-hire" trucking activities. The NAICO Policy contains no exclusion, endorsement, or other term that eliminates coverage for "for-hire" trucking activities. Rather, as NAICO's corporate representative admitted during his deposition, the NAICO Policy provides coverage for the Underlying Accident unless it is reformed by the Court. Ex. 11, Gilmore 30(b)(6) Dep. 34:15-19, 36:25-37:2. Further, it is undisputed that Murray intended ABC Concrete's long-haul and interstate operations to be covered by the NAICO Policy regardless of whether ABC Concrete's tractor-trailers were traveling 150 miles or more. Ex. 3, Murray Dep. 69:11-70:20. However, NAICO's underwriting manager testified that NAICO did not intend to cover these activities, which undermines any argument that there was a mutual mistake to cover everything except for-hire trucking. Ex. 2, Ray Dep. 57:22-59:11, 101:15-18. NCC denies that NAICO was unaware that ABC Concrete was engaged in for-hire trucking because Woods, NAICO's agent, was told that all of the trucking operations were conducted under ABC Concrete before the NAICO Policy was issued. Doc. 74, Ex. 5, Love Dep. 48:22-49:1; Doc. 74, Ex. 6, WOODS(2)000228.

12.     NCC admits paragraph 12.

13.     NCC admits that Murray testified that he believed that ABC Concrete and ABC Septic were distinct legal entities. However, such testimony is directly contradicted by the fact that ABC Concrete and ABC Septic did not file separate tax returns, which is an obvious acknowledgement that ABC Septic was not a distinct legal entity. Ex. 3, Murray Dep. 36:17-24. Moreover, it is simply unbelievable that the president of a company like ABC Concrete that is

involved in the preparation of mandatory corporate reports, filings, and disclosures was not aware that ABC Septic's corporate status had been revoked over ten years before the NAICO Policy was issued and that all of the trucking operations were being conducted under ABC Concrete. Further, Woods knew that the trucking operations were conducted under the same name. Doc. 74, Ex. 6, WOODS(2)000228. If EMC Insurance Company and Woods knew this, the suggestion that Murray did not know is unbelievable. Id. Of course, if Woods is NAICO's agent, Woods' knowledge is binding on NAICO and eliminates any purported mutual mistake.

14.     NCC admits that Murray testified that ABC Concrete transported private loads. For further response, NCC incorporates its response to paragraph 13 herein.

15.     NCC admits that Murray testified that ABC Concrete was not supposed to engage in for-hire trucking. For further response, NCC incorporates its response to paragraph 13 herein.

16.     NCC admits paragraph 16.

17.     NCC admits that Murray testified that ABC Concrete did not have authority to backhaul loads. However, this testimony is inconsistent with what ABC Concrete's actual FMCSA authority, which authorized ABC Concrete to act as a for-hire motor carrier. Ex. 5. For further response, NCC incorporates its response to paragraph 13 herein.

18.     NCC states that ABC Septic and ABC Concrete were the same entity. Doc. 28, p. 2. Thus, it is incorrect to say that one entity delivered the loads while the other did not. For further response, NCC incorporates its response to paragraph 13 herein.

19.     NCC admits paragraph 19. As further evidence of the absence of a mutual mistake, it is undisputed that Murray intended ABC Concrete's long-haul and interstate operations to be covered by the NAICO Policy. Ex. 3, Murray Dep. 69:11-70:20. However, NAICO's underwriting manager testified that NAICO did not intend to cover these activities,

which directly contradicts the allegations in NAICO's Amended Complaint (Doc. 5, ¶ 54). Ex. 2, Ray Dep. 57:22-59:11, 101:15-18. Indeed, Murray specifically testified that the allegations in paragraph 54 of NAICO's Amended Complaint were false. Ex. 3, Murray Dep. 122:5-20. Further, the evidence in this case indicates that all ABC Concrete vehicles were leased to ABC Septic at all times. Ex. 3, Murray Dep. 100:19-22. The prevailing federal regulations, 49 C.F.R. § 376.12, et seq., dictate that vehicles under lease are deemed to be in the exclusive possession and control of the lessee, which is Septic here. Ex. 3, Murray Dep. 100:19-22. This is further evidence that there was no separation between ABC Concrete and ABC Septic.

20.     NCC admits that Murray testified that no back-hauling took place on those trips. However, ABC Septic and ABC Concrete were the same entity at the time of those trips. Doc. 28, p. 2. Thus, it is incorrect to say that one entity delivered the loads while the other did not. For further response, NCC incorporates its responses to paragraphs 13 and 19 herein.

21.     NCC admits that Murray expected for NAICO to cover the trips to Fort Bliss, Texas, and Naco, Arizona, which directly contradicts the allegations in paragraphs 54 and 56 of NAICO's Amended Complaint. (Doc. 5, ¶¶ 54, 56). For further response, NCC incorporates its responses to paragraphs 13 and 19 herein.

22.     NCC admits that Murray purchased multiple insurance policies. The NAICO Policy provided broader coverage (to "any 'auto'") than the NCC Policy (to only "specifically described 'autos'"). Doc. 28, p. 3. For further response, NCC incorporates its response to paragraphs 13 and 19 herein.

23.     NCC denies paragraph 23 because Murray testified that he disagreed with NAICO's contention in paragraph 23; Murray testified that NAICO never offered to issue an insurance policy that excluded coverage for for-hire vehicles; and Murray expressly refused to

sign the affidavit proposed by NAICO to confirm NAICO's contention in paragraph 23. Ex. 3,
Murray Dep. 143:19-144:7; Doc. 74, Ex. 12, 122:21-123:9; Doc. 74, Ex. 1, NAICO000643. The
NAICO Policy provided coverage for all of ABC Concrete's trucking operations, and the fact
that Murray purchased a separate policy is not an indication that Murray intended to limit the
scope of the NAICO Policy. Doc. 28, p. 3. Further, NAICO's agent Woods knew that all of the
trucking operations were conducted under ABC Concrete before the NAICO Policy was issued.
Doc. 74, Ex. 6, WOODS(2)000228. Thus, Woods and NAICO knew that a policy issued by
NAICO providing coverage for "any 'auto'" would cover all of the trucking operations,
including the Underlying Accident. For further response, NCC incorporates its responses to
paragraphs 13 and 19 herein.

24.     NCC states that the application and policy referenced in paragraph 24 speak for
themselves.

25.     NCC states that the policy referenced in paragraph 25 speaks for itself.

26.     NCC states that the policy referenced in paragraph 26 speaks for itself.

27.     NCC admits that ABC Concrete purportedly leased vehicles to ABC Septic,
whose corporate status had been revoked over ten years earlier. Doc. 28, p. 2, Doc. 74, Ex. 1,
NAICO00758. However, the fact that all of the ABC Concrete vehicles were leased to Septic
dictates that no vehicles were technically being operated by ABC Concrete under 49 C.F.R. §
376.12. Ex. 3, Murray Dep. 100:19-22. For further response, NCC incorporates its responses to
paragraphs 13 and 19 herein.

28.     The allegations in paragraph 28 are clearly false. Murray told the FMCSA that
both ABC Concrete and ABC Concrete d/b/a ABC Septic were interstate motor carriers with
ABC Concrete hauling 210,000 miles per year and ABC Septic hauling 55,000 miles per year.

Ex. 4; Ex. 5. For further response, NCC incorporates its responses to paragraphs 13 and 19 herein.

29.     NCC denies paragraph 29. At the time of the Underlying Accident, ABC Septic and ABC Concrete were the same. Doc. 28, p. 2, Doc. 74, Ex. 1, NAICO00758. It is therefore incorrect to say that ABC Septic was involved in the Underlying Accident and ABC Concrete was not. ABC Concrete was also involved in the Underlying Accident as it owned the vehicle involved in the Underlying Accident. Id. For further response, NCC incorporates its responses to paragraphs 13 and 19 herein.

30.     NCC admits that the NCC Policy provided coverage for the Underlying Accident. For further response, NCC incorporates its responses to paragraphs 13, 19, and 29 herein.

31.     NCC admits it received notice of the Underlying Accident. However, NAICO was later put on notice of the Underlying Accident. Doc. 28, p. 3. It is also clear that Murray intended for NAICO to provide coverage for the Underlying Accident by virtue of his refusal to sign NAICO's affidavit. Doc. 74, Ex. 1, NAICO000643-44.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

A.     On August 7, 2014, Alan and Nina Nelson were involved in a motor vehicle accident ("the Underlying Accident") with a tractor-trailer driven by Nicholas Montano and owned by ABC Concrete. Doc. 28, p. 2.

B.     On February 5, 2015, the Nelsons filed suit against ABC Concrete to recover for damages caused by the August 2014 Accident. Doc. 28, p. 2.

C.     The Nelsons' counsel forwarded a copy of the Complaint to NCC on February 10, 2015. Doc. 74-1, Ex. 11, NCC001244-1249.

D.     At the time of the Underlying Accident, ABC Septic was insured under the NCC Policy. Doc. 28, p. 3.

E.     The Motor Carrier Coverage Form in the NCC Policy provided liability coverage only for "Specifically Described 'Autos.'" Doc. 28, p. 3.

F.     The Freightliner tractor Montano was driving at the time of the accident was listed as a scheduled vehicle under the NCC Policy. Doc. 28, p. 3.

G.     NCC assigned defense counsel to defend the Nelsons' suit. Doc. 28, p. 3.

H.     At the time of the Underlying Accident, ABC Concrete was insured under an insurance policy issued by NAICO to ABC Concrete. Doc. 28, p. 3.

I.     The Business Auto Coverage Form in the NAICO Policy provided liability coverage under Symbol 1 for "Any Auto." Doc. 74-1, Ex. 1, NAICO004298-99, NAICO004306-07.

J.     ABC Concrete sought coverage for multiple tractor-trailers that NAICO knew were being operated in interstate commerce, and Murray testified that he intended for the NAICO Policy to cover ABC Concrete's interstate shipments, including trips to Fort Bliss, Texas, which was approximately 400 miles away from ABC Concrete's headquarters. Ex. 1, NAICO000100-103, 3099-3103; Doc. 74-1, Ex. 12, 92:8-17; 122:5-20; Ex. 3, Murray Dep. 69:11-70:20, 94:2-5.

K.     Glaetta Ray, NAICO's underwriting manager, testified that NAICO did not intend to cover ABC Concrete's interstate operations. Ex. 2, Ray Dep. 57:22-59:11, 101:15-18.

L.     Murray told NAICO that ICC filings (signifying for-hire, interstate carriage) would be required for the NAICO Policy. Ex. 1, NAICO003740-41.

M.      Murray told the FMCSA that both ABC Concrete and ABC Concrete d/b/a ABC Septic were interstate motor carriers with ABC Concrete hauling 210,000 miles per year and ABC Septic hauling 55,000 miles per year. Ex. 4; Ex. 5.

N.      NAICO investigated ABC Concrete's operation and noted that it was delivering products within a normal radius of 150 miles in four states. Ex. 1, NAICO003102.

O.      ABC Concrete's defense counsel discovered that the NAICO Policy provided coverage for the Underlying Accident and, on April 17, 2015, tendered the defense of the Nelsons' lawsuit to NAICO. Doc. 28, p. 3.

P.      NAICO forwarded a copy of the April 17, 2015 tender letter and the Nelsons' complaint to Woods, NAICO's agent for the NAICO Policy. Doc. 74-1, Ex. 1, NAICO00341-45.

Q.      Woods was listed as both an agent and producer on the NAICO Policy. Doc. 74-1, Ex. 1, NAICO004249, NAICO004298.

R.      In an internal memo prepared on May 4, 2015, Ryan Gilmore, in-house counsel with NAICO, specifically opined as follows (in pertinent part):

> Based on the facts as described by you in a previous email, I believe that a court would conclude that Montano [the driver in the subject accident] was operating the covered "auto" at issue with the permission of both Septic and Concrete, and would therefore be entitled to an unqualified defense under the NAICO policy.
>
> *****
>
> Although there may [be] arguments to the contrary I believe that a court would likely conclude that the Scottsdale policy is excess over the NAICO policy.

Ex. 1, NAICO00681-683.

S.      Despite this conclusion, a NAICO adjuster sent a letter to ABC Concrete's defense counsel seven days later taking the position that the NAICO Policy did not provide

coverage for the Underlying Accident, and, in any event, provided coverage that was excess to the NCC Policy. Doc. 74-1, Ex. 1, NAICO000757-761.

       T.      In its letter, NAICO acknowledged that, "Septic was dissolved by operation of law and has had no corporate existence since July 22, 2002. Our belief that Septic is simply a trade name utilized by Concrete is supported by the U.S. Department of Transportation records we examined." Doc. 74-1, Ex. 1, NAICO000758.

       U.      On May 6, 2015, five days before NAICO denied the defense tender, NAICO unilaterally amended the NAICO Policy, changing the commercial auto liability coverage from Symbol 1 "Any Auto" to Symbol 7, 8, and 9, which provide coverage for "Specifically Described 'Autos;'" "Hired 'Autos' Only;" and "Non-owned 'Autos' Only." Doc. 74-1, Ex. 1, NAICO004026, NAICO004306.

       V.      The endorsement amending the NAICO Policy made no mention of excluding coverage for "for-hire trucking."

       W.      That same day, NAICO underwriting manager Glaetta Ray sent an email to Woods that stated:

> Confirming our telephone conversation, please move this account immediately.
>
> I reviewed the insureds website, it indicates the insured provides trucking services and they put more than 200,000 miles on their trucks each year. . . . This is not the exposure we wrote and do not want to stay on this long haul exposure.
>
> We intend to send Cancellation Notice on this account.
>
> We are endorsing the Auto Liability to symbol 7, 8, 9.

Doc. 74-1, Ex. 1, NAICO001289.

X.     NAICO's internal notes show that NAICO believed the NAICO Policy should have been issued as a Symbol 7, 8, & 9 policy, but that this was not done due to "some incorrectly answered questions on the application." Ex. 7. The notes state that "If the policy had been issued correctly, NAICO would not have coverage." Id. The notes make no mention of failing to exclude coverage for "for-hire" trucking.

Y.     Thirty days later, NAICO cancelled the NAICO Policy. Doc. 74, Ex. 1, NAICO001286.

Z.     While NAICO was waiting to cancel the NAICO Policy, NAICO tried to get ABC Concrete's owner, Doug Murray, to sign an affidavit stating that ABC Concrete did not intend for NAICO to cover the trucking operations conducted under the name of ABC Septic. Doc. 74-1, Ex. 1, NAICO000647.

AA.     NAICO first asked Woods to get Murray to sign the affidavit and sent Woods a copy of the affidavit on June 3, 2015. Doc. 74, Ex. 1, NAICO000646.

BB.     NAICO told Woods that if Murray would sign the affidavit, NAICO would consider extending the NAICO Policy's cancellation date. Id.

CC.     When asked about his words when he received the affidavit, Murray said "you could stick this where the sun doesn't shine." Ex. 3, Murray Dep. 126:22-127:3.

DD.     Woods could not get Murray to sign the affidavit and told NAICO that because Murray took his business elsewhere, Woods did not feel it would "have much leverage anymore." Doc. 74-1, Ex. 1, NAICO000648-650.

EE.     Upon learning that Woods' attempts to get Murray to sign the affidavit were unsuccessful, NAICO adjuster James Malone sent the affidavit to Murray directly and asked him to sign it. Doc. 74-1, Ex. 1, NAICO000643-44.

FF.     At no point did NAICO's adjuster tell Murray that signing the affidavit could impact the coverage provided by the NAICO Policy. Doc. 74-1, Ex. 10, 24:1-17.

GG.     Murray refused to sign the affidavit. Doc. 74-1, Ex. 1, NAICO000643.

HH.     When Malone asked Murray why he would not sign the affidavit, Murray said "the letter takes your co out of the picture completely." Id.

II.     Murray testified that NAICO never offered to issue an insurance policy to ABC Concrete that limited coverage to only specifically described autos that were not involved in for-hire, long haul trucking. Doc. 74-1, Ex. 12, 122:21-123:9.

JJ.     Murray testified that all ABC Concrete vehicles were leased to ABC Septic at all times and that vehicles leased to ABC Septic would haul products for ABC Concrete under the operating authority issued to ABC Concrete by the FMCSA. Ex. 3, Murray Dep. 100:19-22; Murray Dep. 117:10-19.

KK.     NAICO Underwriter Anita Marshall admitted that information regarding whether an insured leased vehicles to others was material to the underwriting process. Ex. 10, Marshall Dep. 38:8-14.

LL.     Murray testified that he disagreed with NAICO's contention that the NAICO Policy was not intended to cover for-hire trucking operations. Ex. 3, Murray Dep. 143:19-144:7.

MM.     NAICO and Woods entered into an "Agency/Company Agreement," which remained in effect when the NAICO Policy was issued. Ex. 6.

NN.     Woods' president Lyle Love, admitted that the document attached as Ex. 6 represents the operative agreement between Woods and NAICO. Doc. 74-1, Ex. 5, 64:14-20.

OO.    The "Agency/Company Agreement" vested Woods with, among other things, "the authority to solicit, receive and transmit applications for insurance contracts" and "[b]ind and execute insurance contracts." Ex. 6.

PP.    Love stated that NAICO and Woods had "a close relationship" and that, with respect to the NAICO Policy, "Mr. Murray was my client. We represent National American as an agent to sell their product." Doc. 74-1, Ex. 5, 35:5-7, 48:22-49:1.

QQ.    NAICO's internal claim notes show that NAICO believed Woods was NAICO's agent as NAICO's employees referred to Woods as "our agent." Ex. 7.

RR.    NAICO admitted that Woods acted as the agent of both NAICO and ABC Concrete with respect to the NAICO Policy. Ex. 8.

SS.    NAICO underwriter Anita Marshall stated that she considered Woods to be an agent of NAICO and ABC Concrete. Ex. 10, Marshall Dep. 26:12-19.

TT.    In the process of obtaining insurance quotes for ABC Concrete, Woods reached out to Amanda Gill, an underwriting supervisor with EMC Insurance Companies, on November 8, 2012, and asked her to provide a quote for an insurance policy for ABC Concrete. Doc. 74-1, Ex. 6, WOODS(2)000170-71.

UU.    Woods told Gill that ABC Concrete's "long haul trucking is a separate operation with a separate insurance policy." Id.

VV.    Gill responded to Woods' request and told Woods that "It appears the long haul trucking operation is conducted under the same name." Doc. 74-1, Ex. 6, WOODS(2)000228.

WW.    Gill referred Woods to the SAFER System, the Federal Motor Carrier Safety Administration's online database as a source for verifying motor carrier operations. Id.

XX.     NAICO does not dispute that Woods was told that the two "trucking operations [were] conducted under the same name." Doc. 74-1, Ex. 7.

YY.     NAICO's written underwriting protocols require that NAICO's underwriting personnel review reports from the SAFER System for motor carriers insured by NAICO. Doc. 74-1, Ex. 1 NAICO003553.

ZZ.     NAICO underwriting manager Glaetta Ray admitted that NAICO did not review the SAFER System data for ABC Concrete, the FMCSA's database for authorized motor carriers, at any point during the process of underwriting the NAICO Policy. Doc. 74-1, Ex. 8, 31:19-23.

AAA.   Ray contends that there was no reason for NAICO to review the SAFER System data. Doc. 74-1, Ex. 8, 94:18-22.

BBB.   NAICO underwriter Anita Marshall stated that NAICO intended to insure the ABC Concrete's operations in interstate commerce. Doc. 74-1, Ex. 9, 25:10-22; 53:11-19.

CCC.   Ray admitted that if Marshall knew ABC Concrete was operating in interstate commerce, NAICO should have reviewed the SAFER data for ABC Concrete. Doc. 74-1, Ex. 8, 32:8-12.

DDD.   Woods' president Lyle Love, testified that he was familiar with the SAFER system and said that he would be "surprised" if NAICO did not regularly rely on the SAFER system to gather information about the motor carriers NAICO insured. Doc. 74-1, Ex. 5, 49:14-50:5.

EEE.   Both Marshall and Ray admitted that they had never seen or heard of NAICO issuing an insurance policy that excluded coverage for for-hire trucking operations. Ex. 10, Marshall Dep. 35:5-11; Ex. 2, Ray Dep. 20:25-21:9.

FFF.   Neither Marshall nor Ray were able to articulate any basis for distinguishing between for-hire and private loads or why for-hire trucking posed a greater risk than private trucking. Ex. 10, Marshall Dep. 12:10-13:24, 18:4-7; Ex. 2, Ray Dep. 19:13-25, 81:19-84:1.

GGG.   Both Marshall and Ray admitted that, had NAICO known that ABC Concrete was engaged in for-hire, long-haul, interstate trucking, NAICO would not have issued the NAICO Policy. Doc. 74-1, Ex. 8, 25:10-22, 66:22-25, 70:21-24; Doc. 74-1, Ex. 9. 27:25-28:6.

HHH.   NAICO admits that the NAICO Policy provides coverage for the Underlying Accident unless it is reformed. Ex. 11, Gilmore 30(b)(6) Dep. 34:15-22, 36:25-37:2.

III.   Murray testified that the allegations in paragraph 54 of NAICO's Complaint were false. Ex. 3, Murray Dep. 122:5-20.

## ARGUMENT AND CITATION OF AUTHORITY

### A.  NEW MEXICO LAW REGARDING MUTUAL MISTAKE AND NAICO'S BURDEN OF PROOF

NAICO bears the burden of proving that it is entitled to reformation. Pacheco v. Martinez, 636 P.2d 308, 314 (N.M. Ct. App. 1981) ("Where reformation is sought, the burden of proof upon the party seeking reformation must be sustained by evidence that is satisfactory, clear and convincing"). Under New Mexico law, mutual mistake occurs when "there has been a meeting of the minds, an agreement actually entered into, but the contract, deed, settlement, or other instrument, in its written form, does not express what was really intended by the parties thereto." C.R. Anthony Co. v. Loretta Mall Partners, 817 P.2d 238, 245 (N.M. 1991). Reformation is only appropriate if there is proof of a prior agreement to which the contract can be reformed. W. Ins. Co. v. Cimarron Pipe Line Constr., Inc., 748 F.2d 1397, 1399 (10th Cir. 1984). Thus, NAICO "must not only show clearly and beyond doubt that there has been a mistake, but [it] must also be able to show with equal clearness and certainty the exact and

precise form and import that the instrument ought to be made to assume." <u>Twin Forks Ranch v. Brooks</u>, 964 P.2d 838, 842 (N.M. Ct. App. 1998) (citing 13 Samuel Williston, A Treatise on the Law of Contracts § 1548, at 124-25 (3d ed.1970)).[1]

Of course, "[r]eformation should not be used by the court to add to, modify, or redraft the terms of a contract in light of newly discovered information: It is not the role of the court to rewrite the terms of the parties' agreement." <u>Id.</u> at 844 (citing 13 Samuel Williston, A Treatise on the Law of Contracts § 1548, at 128 (3d ed.1970) ("What the parties did not agree to cannot be added by the court.")).

### B.   NAICO'S REFORMATION CLAIM FAILS AS A MATTER OF LAW BECAUSE NAICO KNEW THAT ABC CONCRETE WAS ENGAGING IN LONG-HAUL, FOR-HIRE, INTERSTATE TRUCKING.

NAICO's entire argument rests on the premise that NAICO reasonably believed that the trucking operations of ABC Concrete and ABC Septic were completely separate and distinct. However, the undisputed facts show that NAICO's agent Woods knew that all trucking operations were conducted under the same name. Thus, NAICO's claim for reformation must fail as a matter of law.

### 1.   Woods was NAICO's agent, and its knowledge is imputed to NAICO under New Mexico law.

Under New Mexico law, "Any licensed agent appointed as agent by an insurer shall, in any controversy between the insured or his beneficiary and the insurer, be held to be the agent of

---

[1]      In <u>Twin Forks</u>, the New Mexico Court of appeals noted that:

> The party seeking to reform a writing must prove by clear and convincing evidence that a mutual mistake occurred. <u>See</u> <u>Butler v. Butler</u>, 80 N.M. 36, 38, 450 P.2d 922, 924 (1969); <u>Wright v. Brem</u>, 81 N.M. 410, 411, 467 P.2d 736, 737 (Ct.App.1970). "For evidence to be clear and convincing, it must instantly tilt the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true." <u>In re Sedillo</u>, 84 N.M. 10, 12, 498 P.2d 1353, 1355 (1972).

<u>Twin Forks</u>, 964 P.2d at 841.

the insurer which issued the insurance solicited or applied for, anything in the application or policy to the contrary notwithstanding. . . ." N.M. Stat. Ann. § 59A-18-24 (West). New Mexico Courts apply this statute consistently, finding that regardless of policy language to the contrary, the unambiguous language of the statute dictates that a licensed insurance agent is deemed to be an agent of the insurer. See Federated Serv. Ins. Co. v. Martinez, 385 Fed. Appx. 845, 849 (10th Cir. 2010) (recognizing that N.M. Stat. Ann. § 59A-18-24 unambiguously requires that a licensed insurance producer be considered an agent of the insurer); see also Jackson Nat. Life Ins. Co. v. Receconi, 827 P.2d 118, 127-29 (N.M. 1992) (noting that, under New Mexico law, an insurance agent's knowledge is imputed to the insurer).

Both NAICO and Woods believed that Woods was NAICO's agent. NAICO clearly believed that Woods was its agent as NAICO's own internal claim notes refer to Woods as "our agent." UMF QQ. Also, NAICO and Woods had entered into an "Agency/Company Agreement" that was in effect when the NAICO Policy was issued, and the agreement unmistakably shows that Woods was NAICO's agent. UMF MM. Woods' President Lyle Love admitted that the "Agency/Company Agreement" represented the operative agreement between Woods and NAICO. UMF NN. The "Agency/Company Agreement" vested Woods with, among other things, "the authority to solicit, receive and transmit applications for insurance contracts" and "[b]ind and execute insurance contracts." UMF OO. Woods' president Lyle Love acknowledged the "close relationship" between NAICO and Woods and admitted that, with respect to the NAICO Policy, "We represent National American as an agent to sell their product." UMF PP. NAICO even admitted during discovery that Woods was NAICO's and ABC Concrete's agent for the NAICO Policy. UMF RR. Of course, NAICO is incorrect as Woods was not ABC Concrete's agent. But NAICO's admission that Woods was its agent is nonetheless significant to

this dispute (and binding on NAICO) because it shows that Woods' knowledge must be imputed to NAICO.

New Mexico law requires that Woods' knowledge be imputed to NAICO. "As a general rule, the knowledge of, or notice to, an insurance agent which is acquired by the agent while acting within the scope of his authority is chargeable to the insurer even though such notice or knowledge is not actually communicated to the insurer." Receconi, 827 P.2d at 127 (internal citations omitted); see also Martinez, 385 F. App'x at 848; Lumbermens Mut. Ins. Co. v. Bowman, 313 F.2d 381, 388 (10th Cir. 1963); 3 Couch on Ins. § 49:1 (recognizing that "[n]otice to an insurer's agent, or knowledge obtained by him or her while acting within the scope of the agent's authority, is notice to or knowledge of the insurer with respect to material facts affecting the risk"). New Mexico courts have applied this rule in numerous situations from preventing an insurer from avoiding payment under a life insurance policy because the agent knew of the insured's poor health without communicating the same to the insurer, Receconi, 827 P.2d at 127-28, to finding that an insurer was bound to cover fire damage to a commercial building despite not being informed of a transfer of interest in the property because the insurance agent was aware of the transfer. Bowman, 313 F.2d at 388. Under these cases, Woods' status as NAICO's agent and its documented relationship with NAICO require that Woods' knowledge be imputed to NAICO under New Mexico law.

### 2. Woods knew that all of the trucking operations were conducted under ABC Concrete.

The undisputed facts show that Woods, NAICO's agent, knew that all of the ABC Concrete/ABC Septic trucking operations, which included any for-hire trucking activities, were conducted under the same name, i.e., the operations were not separate and distinct. On November 8, 2012, Woods reached out to Amanda Gill, an underwriting supervisor with EMC

Insurance Companies, and asked her to provide a quote for an insurance policy for ABC Concrete. UMF TT. Woods initially told Gill that ABC Concrete's "long haul trucking is a separate operation with a separate insurance policy." UMF UU. Two days later, Gill told Woods that "It appears the long haul trucking operation is conducted under the same name." UMF VV. Gill went on to refer Woods to the FMCSA's SAFER online database as a source providing more information about the true scope of ABC Concrete's trucking operations. UMF WW. NAICO admits that Woods was told that all of the trucking operations were conducted under the same name. UMF XX.

The email correspondence between Gill and Woods plainly shows that Woods, NAICO's agent, knew that all of the ABC Concrete/ABC Septic trucking operations were being conducted under the same name and that ABC Concrete was therefore acting as a for-hire motor carrier. Under New Mexico law, notice of these facts is imputed to NAICO. Martinez, 385 F. App'x at 848; Bowman, 313 F.2d at 388; Receconi, 827 P.2d at 127. NAICO is deemed to have knowledge of this fact regardless of whether or not Woods actually communicated the information to NAICO. Receconi, 827 P.2d at 127.

Because NAICO had imputed knowledge of the full extent of ABC Concrete's trucking operations before it issued the NAICO Policy, NAICO cannot now claim a "mutual mistake" regarding the scope of ABC Concrete's trucking operations.[2] Thus, NAICO cannot prove "clearly and beyond doubt that there has been a mistake" that would justify reformation, Twin Forks, 964 P.2d at 842, and its claim for reformation for mutual mistake fails as a matter of law.

---

[2] Whether Woods actually told this information to NAICO is irrelevant to the issue of mutual mistake due to NAICO having imputed knowledge by virtue of its agency relationship with Woods. To the extent that Woods was deemed to only be the agent of ABC Concrete (contrary to even NAICO's admission regarding Woods being an agent of both NAICO and ABC Concrete, UMF RR), the fact that Woods did not convey this information to NAICO is strong evidence that NAICO and ABC Concrete did not agree upon a "for-hire exclusion" being added to the policy. Specifically, if NAICO thought that it would not be insuring any operations of ABC Concrete for "for-hire long-haul or interstate trucking operations" as alleged by NAICO in paragraph 54 of its Amended Complaint, there would be no need for NAICO and ABC Concrete to discuss and agree upon a "for-hire exclusion." (Doc. 5, ¶ 54).

**C.  ABC CONCRETE EXPRESSLY REJECTED NAICO'S CLAIM THAT A MUTUAL MISTAKE OCCURRED.**

When NAICO learned of this claim, NAICO's general counsel drafted an affidavit for Doug Murray, the president of ABC Concrete, to sign to memorialize the alleged mutual mistake. UMF Z. NAICO first asked Woods to have Murray to sign the affidavit. UMF AA. Woods could not get Murray to sign the affidavit. UMF DD. Upon learning that Woods' attempts to have Murray sign the affidavit were unsuccessful, NAICO adjuster James Malone sent the affidavit to Murray directly and asked him to sign it. UMF EE. When asked about his response to receiving the affidavit, Murray  said that "you could stick this where the sun doesn't shine." UMF CC. His written response was that he refused to sign the affidavit because "the letter takes your co out of the picture completely." UMF HH. This evidence eliminates any possibility that NAICO could prove by clear and convincing evidence that NAICO and ABC Concrete reached an agreement regarding the content of the affidavit that was not memorialized in the policy.

**D.  ABC CONCRETE EXPRESSLY REJECTED NAICO'S POSITION IN ITS OPERATIVE PLEADING.**

In its Amended Complaint, which is NAICO's operative pleading, NAICO pled as follows:

> 54.   Both NAICO and ABC MFG labored under the same erroneous conception that the NAICO policy would not be insuring for-hire long-haul or interstate trucking operations for ABC MFG. Had NAICO known the true facts, it would have issued a policy of insurance that provided insurance only for "Specifically Described 'Auto'" and would not have included vehicles involved in for-hire long-haul trucking.

(Doc. 5, ¶ 54). However, Doug Murray, ABC Concrete's owner, specifically testified that this assertion was false.[3] UMF III.

NAICO simply cannot get its story straight with regard to any agreement between NAICO and ABC Concrete when the policy was issued. For example, Doug Murray says that he intended NAICO to cover hundreds of trips by trucks hauling ABC Concrete's products to/from Fort Bliss, Texas (approximately 400 miles each way), but NAICO says they did not intend to cover such trips and that there was no mistake between the parties. UMF J, K. Incredibly, NAICO says it did not intend to cover any interstate operations of ABC Concrete, UMF K, but its own loss control survey showed that ABC Concrete delivered its product in 46 states and operated in a "normal" radius of 150 miles in four states. UMF N.

There is simply no mutual mistake here.

### E. NAICO'S POSITION REGARDING THE ALLEGED "MUTUAL MISTAKE" IN ITS OPERATIVE PLEADING IS CLEARLY FALSE.

As noted in the prior section, NAICO's Amended Complaint indicates that if NAICO knew the true facts (which it did as noted above) it would have issued a scheduled vehicle policy that did not include vehicles involved in for-hire long-haul trucking. (Doc. 5, ¶ 54). Further, in its request for relief in its Amended Complaint, NAICO specifically requested that the Court reform the NAICO Policy in this manner (in pertinent part):

> WHEREFORE, the Plaintiff, National American Insurance Company, respectfully asks this Court for a Judgment to reform the National American Insurance Company policy to limit liability coverage to "Specifically Described 'Autos'" that were not intended to be used as for-hire, long-haul, interstate trucking

---

[3]       It is also, at a minimum, a fact question as to whether Doug Murray believed that ABC Concrete and ABC Septic were legally conducting separate operations when ABC Septic had been dissolved for over ten years, a single tax return was filed for both ABC Concrete and ABC Septic, and all vehicles were leased to ABC Septic are deemed to be in the exclusive possession of ABC Septic at all times under 49 C.F.R. § 376.12. UMF JJ.

(Doc. 5, p. 10). Of course, "a party is bound by what it states in its pleading . . . judicial efficiency demands that a party not be allowed to controvert what it has already unequivocally told a court by the most formal and considered means possible." Knudsen v. U.S., 254 F.3d 747, 752 (8th Cir. 2001).

Aside from testifying that there was no agreement as alleged by NAICO (as noted in the preceding section), Doug Murray clearly testified that all of ABC Concrete's trucks were leased to ABC Septic[4] and that he would not and could not have accepted such change to the policy since the same trucks used to haul ABC Concrete's product to/from places like Fort Bliss, Texas, (some 400 miles away from ABC Concrete's headquarters) were used by ABC Septic. UMF J, JJ.

In addition, NAICO's actions directly contradict its assertion. In particular, when NAICO allegedly learned the "true facts," it did not issue a scheduled vehicle policy that did not include vehicles involved in for-hire long-haul trucking. UMF V. Rather, NAICO unilaterally issued a policy endorsement converting the policy from a "Symbol 1" policy covering any auto to a "Symbol 7,8, and 9" policy covering scheduled vehicles, hired vehicles, and non-owned vehicles with no mention of any limitation for "for-hire long-haul trucking."  UMF U, W.  NAICO cancelled the policy shortly thereafter with no mention of a "for-hire exclusion." UMF W, Y. Thus, when NAICO allegedly knew the "true facts," its actions directly contradict the binding statements in its pleading.

---

[4]      Under 49 C.F.R. § 376.12, et seq., any vehicles leased to ABC Septic would be deemed to be in the exclusive possession and control of ABC Septic at all times. Interestingly, NAICO admits that ABC Concrete's application falsely indicated that none of its trucks were leased to another motor carrier with such allegation being material to the underwriting process. UMF X, KK. NAICO has not asserted a material misrepresentation claim, these facts present further evidence that there was no meeting of the minds between NAICO and ABC Concrete.

**F.  NAICO'S ATTEMPT TO USE ITS SUMMARY JUDGMENT MOTION TO AMEND ITS AMENDED COMPLAINT TO ASSERT A NEW MUTUAL MISTAKE IS IMPROPER AND, IN ANY EVENT, IS DIRECTLY CONTRADICTED BY THE EVIDENCE.**

NAICO has clearly recognized that its allegations and request for relief in its Amended Complaint were not accurate, and, via its motion for summary judgment, is attempting to pivot to a new position asserting that what the parties really agreed upon before the NAICO Policy was issued was that the policy should have included a specific exclusion precluding coverage for "for-hire" trucking operations. Of course, as a threshold matter, if NAICO cannot get the facts right in its own mind, there cannot be a mutual mistake here. In any event, a motion for summary judgment cannot be used as an amended complaint See, e.g., Zachair, Ltd. v. Driggs, 965 F. Supp. 741, 748 (D. Md. 1997), aff'd, 141 F.3d 1162 (4th Cir. 1998) ("[A]s the defendants correctly point out, Zachair is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint.").

Even if NAICO was allowed to amend its pleadings at this late date, the assertion that the parties agreed that a "for-hire" exclusion would be included in the policy before it was issued is unsupported by any evidence and directly contradicted by the fact that: (1) NAICO's underwriters have never seen or heard of a "for-hire trucking" exclusion, UMF EEE, and (2) Doug Murray testified that there was never any discussion about a "for-hire trucking" exclusion. UMF II. Moreover, as noted above, when NAICO's general counsel drafted an affidavit that purportedly memorialized this mutual mistake, Doug Murray refused to sign it, noting that he did not want NAICO to be out of the picture with regard to the subject claim. UMF HH. Also, as noted above, NAICO did not issue a "for-hire exclusion" when it allegedly learned the "true facts." UMF U, V, W, X.

New Mexico law does not permit reformation for mutual mistake unless the party seeking reformation both proves that a mutual mistake was made and shows the exact form to which the contract should be reformed to comport with the parties' prior agreement. Twin Forks, 964 P.2d at 842. NAICO cannot prove either element, and its motion for summary judgment should be denied.

### G.  NAICO'S INCONSISTENT POSITIONS DEMONSTRATE UNCLEAN HANDS AND UNDERMINE ITS MUTUAL MISTAKE CLAIM

In an internal memo memorializing his opinion, Ryan Gilmore, in-house counsel with NAICO, specifically opined as follows (in pertinent part):

> Based on the facts as described by you in a previous email, I believe that a court would conclude that Montano [the driver in the subject accident] was operating the covered "auto" at issue with the permission of both Septic and Concrete, and would therefore be entitled to an unqualified defense under the NAICO policy.
>
> *****
>
> Although there may [be] arguments to the contrary I believe that a court would likely conclude that the Scottsdale policy is excess over the NAICO policy.

UMF R. Despite this conclusion, an adjuster with NAICO sent a letter to ABC Concrete's defense counsel seven days later taking the position that the NAICO policy did not provide coverage for the accident, and, in any event, provided coverage that was excess to National Casualty Company's policy. UMF S. This letter to ABC Concrete (via its defense counsel) directly contradicts NAICO's internal conclusion (seven days earlier) that the NAICO policy provided primary coverage for the accident. UMF R, S. This letter demonstrates that NAICO would do or say whatever it needed to do to avoid paying any monies for the subject loss. Given the fact that reformation is an equitable remedy, this fact alone demonstrates unclean hands and should prevent reformation.

In any event, aside from the letter creating an obvious credibility problem for NAICO, the absence of any assertion in the letter that NAICO and ABC Concrete had previously agreed that a "for-hire exclusion" would be included in the policy completely undermines NAICO's claim of a mutual mistake here.[5] The same thing can be said for the fact that the words "for-hire" do not appear in NAICO's claim notes. UMF X. There is simply no evidence that NAICO and ABC Concrete agreed to include a "for-hire exclusion" in the NAICO Policy before it was issued.

## H. NAICO IS NOT ENTITLED TO REFORMATION BECAUSE THE PURPORTED MISTAKE COULD HAVE BEEN AVOIDED BY NAICO'S DUE DILIGENCE.

NAICO's reformation claim also fails as a matter of law because NAICO failed to exercise due diligence in handling the NAICO Policy. Reformation for mutual mistake is not available under New Mexico law when the purported mutual mistake results from a failure to exercise due diligence. Twin Forks Ranch, Inc. v. Brooks, 964 P.2d 838, 842 (N.M. Ct. App. 1998). In Twin Forks, the Court denied a reformation claim related to a party's handling of water rights in a real estate contract "because the consequences of not reserving the water rights (either in the oral agreement or in writings) was neither unforeseen nor unforeseeable." Id. at 844. The Court reasoned that reformation was impermissible "[w]hen there is no mistake, but merely a lack of full knowledge of facts, which, as here, is due to the failure of a party to exercise due diligence to ascertain them." Id. (citing Marrujo v. Chavez, 426 P.2d 199, 203 (N.M. 1967)).

Here, as in Twin Forks, NAICO's failure to exercise due diligence bars its claim for reformation based upon mutual mistake. For example, NAICO's underwriting manager admitted

---

[5]     It is notable that, in its letter, NAICO acknowledged that:

> Septic was dissolved by operation of law and has had no corporate existence since July 22, 2002. Our belief that Septic is simply a trade name utilized by Concrete is supported by the U.S. Department of Transportation records we examined.

UMF T.

that NAICO did not review the FMCSA's SAFER System data for ABC Concrete at any point during the process of underwriting the NAICO Policy. UMF ZZ. NAICO's failure to review SAFER violated NAICO's internal underwriting protocols, which specifically list reviewing SAFER System data as part of the process for underwriting a policy to be issued to a motor carrier. UMF YY. Indeed, Lyle Love, Woods' president and NAICO's agent, testified that he was familiar with the SAFER system and said that he would be "surprised" if NAICO did not regularly rely on the SAFER system to gather information about the motor carriers NAICO insured, which, of course, would include ABC Concrete. UMF DDD.

NAICO's underwriting manager, Glaetta Ray, suggested that the failure to obtain SAFER data for ABC Concrete did not violate its underwriting protocols because there was "no reason" for NAICO to obtain SAFER data for ABC Concrete since NAICO was not insuring long-haul trucking. UMF AAA. This argument is misguided because Murray obviously sought such coverage from NAICO, and Anita Marshall, NAICO's underwriter for the NAICO Policy, acknowledged that she was aware ABC Concrete was operating in interstate commerce and that NAICO intended to cover the ABC Concrete trucks hauling their product across the United States. UMF J, BBB. Of course, Ray admitted that if Marshall was aware that ABC Concrete was operating in interstate commerce, NAICO should have reviewed the SAFER data. UMF CCC.

Thus, in addition to the fact that NAICO had written protocols instructing NAICO underwriters to review SAFER data, the testimony of NAICO's own employees shows that NAICO should have reviewed the SAFER data for ABC Concrete. UMF BBB, CCC. NAICO's failure to exercise due diligence by collecting basic and easily-accessible SAFER System data–data actually collected by other insurers as part of the underwriting process–when its

underwriting manager admitted that NAICO should have done so plainly demonstrates a failure to exercise due diligence in ascertaining the basic facts of the risks NAICO agreed to underwrite in the NAICO Policy. New Mexico law does not permit reformation for mutual mistake under these circumstances. <u>Twin Forks</u>, 964 P.2d at 842.

## <u>CONCLUSION</u>

For the reasons set forth above, NAICO's Motion for Summary Judgment should be denied.

Respectfully submitted this 7th day of February, 2018.

By /s/Kevin M. Sexton
  Kevin M. Sexton, Esq.
  Montgomery & Andrews, P.A.
  100 Sun Avenue, Suite 410
  Albuquerque, NM 87109
  Telephone: (505) 884-4200
  Facsimile: (505) 888-8929
  Email: ksexton@montand.com

  /s/Scott W. McMickle
  Scott W. McMickle, Esq.
  McMickle, Kurey & Branch, LLP
  200 S. Main Street
  Alpharetta, GA  30009
  Telephone: (678) 824-7800
  Facsimile: (678) 824-7801
  Email: SWM@mkblawfirm.com
  *Admitted Pro Hac Vice*

  **Attorneys for National Casualty Company**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 7th day of February, 2016, I filed the foregoing **DEFENDANT NATIONAL CASUALTY COMPANY'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

| | |
|---|---|
| James H. Johansen, Esq. | Mitchel S. Burns, Esq. |
| Brett C. Eaton, Esq. | Tucker, Burns, Yoder & Hatfield |
| Charles B. Kraft | 105 N. Orchard Avenue |
| BUTT THORNTON & BAEHR PC | Farmington, NM 87401 |
| P.O. Box 3170 | **Attorney for Defendants** |
| Albuquerque, NM 87190-3170 | **ABC Concrete MFG. Co., Inc.; ABC** |
| **Attorneys for Plaintiff** | **Concrete MFG. Co., Inc. d/b/a ABC** |
| | **Septic Systems, Inc.** |

/s/Kevin M. Sexton
KEVIN M. SEXTON
Montgomery & Andrews, PA
100 Sum Avenue
Suite 410
Albuquerque, NM 87109
Telephone:  (505) 884-4200
Email:  ksexton@montand.com

and

/s/Scott W. McMickle
SCOTT W. McMICKLE
McMickle, Kurey & Branch, LLP
200 S. Main Street
Alpharetta, GA  30009
Telephone:  (678) 824-7800
Facsimile:  (678) 824-7801
Email:  SWM@mkblawfirm.com
Admitted *Pro Hac Vice*

**Attorneys for Defendants**
**Scottsdale Insurance Company and**
**National Casualty Company**